BENNINGTON, CODDINGTON B. FISH *v.* ANDREW GORDON & WIFE and
*February,*
1838.                                          PHEBE HILL.

*(In Chancery.)*

> Deeds take effect from the time of their delivery, and a mortgage, therefore, dated previously to the deed, from the mortgagee to the mortgagor, both being delivered at the same time, is not thereby released.
>
> A grantee of the mortgagor, in such case, becomes merely the assignee of the equity of redemption, unless it appear that he is a *bona fide* purchaser, *deceived by the record,* and that he paid *a valuable consideration.*

THIS was a bill for the foreclosure of a mortgage, from Phebe Hill, one of the defendants, to the orator. The bill set forth,—

1. The mortgage from said Phebe Hill to the orator, dated Jan. 7, 1833 ;

2. A mortgage from said Phebe Hill to Phebe Maria Hill, of the same premises, dated March 16, 1833 ;

3. A mortgage of the same premises, from Phebe Hill to Nathaniel Cheney, jr. dated March 18, 1833 ;

4. An assignment by said Cheney to Phebe Maria Hill, of the last mentioned mortgage, dated 18th March, 1833 ;

5. A quit-claim deed from Phebe Hill to Andrew Gordon, dated Feb. 29, 1834 ;

6. That Andrew Gordon and Phebe Maria Hill intermarried, Jan. 1, 1834 ;

And concluded with an appropriate prayer for relief.

Andrew Gordon answered, not denying the existence of the mortgage deed from Phebe Hill to the orator, but alleging, that, at the date of the deed from said Phebe Hill to him, he " did not know or suppose that the orator had any " uncancelled mortgage upon the premises, and that he then " understood and believed that the orator had, by deed, con- " veyed all his interest in said premises back to the said Phe- " be Hill ;" and that " to satisfy this defendant that the land " was free from any incumbrance, the said Phebe Hill then " and there brought forward and delivered to this defendant, " a warranty deed from the orator, bearing date the 19th " February, 1833, duly executed, acknowledged and record- " ed, conveying the same premises to the said Phebe Hill."

The answer further alleged, that, at the date of said last mentioned deed, there was an incumbrance upon the premi-

ses, to wit, a mortgage deed from Abraham Williams to one
Joseph Bell, conditioned for the payment of twenty-five dol-
lars, and the interest thereon, which sum, with the interest,
this defendant had been required to pay, and had paid,
amounting to thirty-six dollars; and that he had requested
the orator to pay said sum, but that the orator had refused
to pay it;—and concluded with a prayer that the orator might
be decreed to pay said sum, with interest thereon, together
with costs.

It appeared from the testimony in the case, that the orator
had, on the 14th May, 1832, executed a bond to Phebe Hill,
conditioned that, upon the payment by the said Phebe of a cer-
tain note therein mentioned, and the execution of a mortgage
of the premises in question, by her, to the orator, for securing
the payment of a further sum, the orator should convey, by
warranty deed, the said premises to said Phebe Hill.

It further appeared, that the mortgage deed from the said
Phebe Hill to the orator, was, in the month of January, 1833,
offered by her to the orator, in fulfilment of a part of the
condition of said bond, on her part to be performed, but that
said deed was not delivered to the orator, in consequence of
some misunderstanding about the payment of the note men-
tioned in said bond; but that, afterwards, in February, 1833,
the orator executed a warranty deed, conveying the premises
to said Phebe Hill, and that, on that occasion, the said deed,
together with the orator's bond to her, and her mortgage
deed aforesaid to the orator, and the notes described therein,
were placed in the hands of a third person, to be delivered
upon the happening of a future event, which afterwards oc-
curred, and the papers were thereupon delivered to the par-
ties respectively.

*D. Roberts, jr.* for orator.

I. The answer of Gordon, if true, cannot bar the relief
sought by the bill.

The statement respecting the warranty deed from Fish to
Phebe Hill, bearing a date subsequent to the date of the
mortgage set out in the bill, is evasive and delusive, avoid-
ing the real point, by words, cautiously and cunningly selec-
ted, conveying a false impression, by telling only half the
truth, and not averring that the warranty deed was execu-
ted subsequent to the mortgage. The most that can be

BENNINGTON,
February,
1838.

———
Fish
v.
Gordon. et al.

made of the averment, is, that the warranty deed bore date subsequent to the date of the mortgage. But suppose the delivery of the warranty deed and mortgage, were concurrent acts, which consists with the averment; and then the date of the instrument is a matter wholly immaterial.

An instrument takes effect, as a deed, from its delivery. This is an act extrinsick, and does not appear upon the face of the deed, but must necessarily be proved by evidence *aliunde*; for the delivery is an act subsequent to the signing and sealing, and the deed cannot certify it in anticipation of the fact. And so the words, "signed, sealed and delivered in presence of us, &c." are the words of the subscribing witnesses, not of the party. As a deed takes effect by and from the delivery, it is said, that the date is no part of the substance of a deed, and not necessary to be inserted. The real date of a deed is the time of delivery. 2 Johns. R. 234. 4 do. 230.

Thus, a deed may be proved to have been delivered either before, or after, the day when it purports to have been made. 1 Phil. Ev. 485. 1 Ch. Pl. 348. *Fairbanks, admr.* v. *Metcalf et al,* 8 Mass. R. 240. *Hamilton et al.* v. *Trustees of Phillips' Academy,* 12 do. 463. The averment, therefore, that the warranty deed bears date subsequent to the date of the mortgage, is not equivalent to an allegation, that the warranty deed was *executed* after the *execution* of the mortgage. But if it were, the testimony would fully disprove it.

If, then, the execution of the mortgage and warranty deed, were concurrent acts, parts of the same transaction, the discrepancy between the nominal and actual date of the instrument cannot avail the defendant. Besides, the answer shows that Gordon, when he took his conveyance, had a knowledge of the mortgage to Fish. But this he could not have known previously to February 19, 1833, (the date of the warranty deed) for it had not an earlier existence. He must have known, therefore, that the warranty deed and mortgage had a concurrent existence. The difference of dates could not, then, have deceived him.

II. To the claim of the defendant, for allowance for the amount of the note paid by him to Bell, it is sufficient to answer ;

1. That Williams is not shown to be in the chain of title ;

that he was ever the owner of the premises, and, as such, had authority to mortgage them, or that the orator claims under him.

2. The claim must be preferred by cross bill, for it is no answer to the bill, and does not come within its scope. *Troup* v. *Haight*, Hopk. R. 239. *Petteson* v. *Hull*, 9 Cow. 747.

*Sargeant & Miner* and *Phineas Smith*, for defendants, Gordon & wife.

Gordon is not bound by any transaction between the orator and Phebe Hill. He had a right to take the title as he found it of record, when it depends on deeds that the law requires to be recorded.

He also claims that he is intitled to a decree for the amount of what he paid to clear Williams' mortgage. The orator, claiming equity, must do equity.

The opinion of the Court was delivered by

PHELPS, Chancellor.—As between the orator and Phebe Hill, it seems to be conceded that the orator is entitled to a decree, notwithstanding the inverted order in which the deeds present themselves. The deed from him to her, is of later date than the mortgage on which the bill is founded. But, as these deeds take effect from the delivery, respectively, the date becomes unimportant. The testimony filed in the case, shows, that both conveyances are but one transaction, and this court will give to each its proper effect. Discarding the discrepancy of dates, which cannot affect the legal import of the transaction, it becomes the simple case of a purchase, with a mortgage to secure the purchase money. In this point of view, we must regard the orator's deed to Phebe Hill, as enuring to his benefit, as mortgagee, and as creating a title in her, subject to the mortgage.

But it is insisted that the other defendant, Gordon, being a purchaser from Phebe Hill, may rely upon the dates as apparent of record, and is not subject to be controlled by the equitable considerations suggested. Without stopping now to enquire, whether a *bona fide* purchaser, for a valuable consideration, might shield himself from the obvious equity of the orator's claim, by the inversion of dates, as apparent upon the town record, it is sufficient to say, that nothing appears upon his answer, or the proofs in the case, which entitles the defendant to that character. As the mere assignee

*Margin:*

BENNINGTON, *February*, 1838.

Fish *v.* Gordon. *et al.*

of the equity of redemption, he stands on no higher ground than his assignor. To entitle him to the superior equity, it must appear that he was a *bona fide purchaser, deceived by the record*, and that he paid a *valuable consideration*.

Upon both these points his answer is altogether unsatisfactory. He does not deny full knowledge of the equity of the orator's claim, nor indeed, that he was fully aware of the facts of the case, as here exhibited. He swears, that, at the time of taking his deed, " he did not know or suppose that the said orator had any *uncancelled* mortgage upon said premises." " That he then understood and believed, that, prior to that time, he the said orator had, by deed, conveyed all his interest in said premises, back to the said Phebe Hill." Now all this is consistent with the supposition, that he was fully acquainted with all the circumstances of the transaction, and relied upon what he considered a blunder in the transacting of the business, as defeating the mortgage. Any man, who could convince himself that such would be the effect of the anachronism in the date, could swear to as much. If such, indeed, were the effect, then the plaintiff had no longer an *"uncancelled* mortgage," and had, without doubt, " conveyed back" his interest in the premises.

As to any consideration paid, or agreed to be paid, for the assignment, the answer is silent. We are, therefore, at liberty to treat it as purely voluntary. We may go farther, and consider the whole transaction in relation to this assignment, as a mere devise to give additional force to an accidental legal advantage, (as they viewed it) which these parties could not, in equity, nor in common honesty, insist upon ; and we may do this without impugning the answer.

There is nothing, therefore, in the case which would place Gordon on better footing than his co-defendant. He took the equity of redemption precisely as his assignor had it.

As to the attempted set-off, there are two very satisfactory reasons why it cannot be allowed.

First, it is a proper subject of a cross bill, and not of an answer ; and secondly, it does not appear that the orator was in any wise responsible for the incumbrance.

Decree for the orator.